581 P.2d 260

**William D. BURGY and Meryl Burgy, husband and wife, Appellants,**

v.

**Clarence D. HUBBARD and Lillian Hubbard, husband and wife, Appellees.**

No. 2 CA–CIV 2781.

Court of Appeals of Arizona, Division 2.

April 18, 1978.

Rehearing Denied May 24, 1978.

Review Denied June 20, 1978.

Aboud & Aboud by Michael J. Aboud, Tucson, for appellants.

Slutes, Browning, Zlaket & Sakrison, P. C., by Thomas A. Zlaket, Tucson, for appellees.

OPINION

HOWARD, Judge.

This is a personal injury action. The jury awarded appellant the sum of $1,160.15. Appellant moved for an additur or in the alternative for a new trial. Both motions were denied by the trial court.

Since the sum of $1,160.15 is the exact amount of the medical expenses which were incurred, appellant claims there was no award for pain and suffering, and, since both doctors testified that the accident triggered her arthritic symptoms, the failure to award anything for pain and suffering was evidence of passion and prejudice mandating a new trial or an additur.

Mrs. Burgy claimed that she suffered a whiplash injury as a result of a rearend automobile accident. At the time of the accident she was 64 years of age and was unemployed. At the scene of the accident

she complained that she had a pain in her neck and was taken to the hospital at the insistence of the police officers. She was x-rayed and given medication for pain. Six days later she saw her physician, Dr. Sawyer. She testified that she never had any pain in her neck prior to the accident, but admitted on cross-examination that she was treated once prior to the accident by Dr. Sawyer for lower back pain. Appellant stated that when she first saw Dr. Sawyer after the accident she had a great deal of pain in her neck and shoulders. At the time of the trial she complained of stiffness in her neck, dizziness and an inability to use her left arm. Bending forward produced a pain in her neck. Although Dr. Sawyer prescribed a muscle relaxant, she refused to take most of the medication because she believes in taking as little medicine as possible. If the pain got too severe she took Tylenol, a non-prescription drug. She also testified to a limitation of certain of her activities after the accident. Although she made 54 office visits to Dr. Sawyer relative to the accident, she claims she obtained only temporary relief from her symptoms and that they would return after the treatment.

Dr. Sawyer testified that prior to the accident he was treating Mrs. Burgy for high blood pressure and hypertension. She also had a pre-existing arthritic condition in her neck and a condition of the bones of the shoulder which caused their softening. His examination of her six days after the accident revealed that she had quite a limited range of motion in her shoulders and neck and was suffering from discomfort and pain. His diagnosis was that of a cervical-dorsal ligamentous strain due to the accident. He further believed that the healing process was delayed by the arthritis. He testified that were it not for the fact that an accident had taken place, he would have believed her symptoms were caused by her arthritic condition, hypertension and arteriosclerosis; however, Dr. Sawyer attributed the causation to the accident since she had not displayed those symptoms prior to the accident.

Dr. Paul H. DeVries, an orthopedic surgeon, testified for the defense. He had examined Mrs. Burgy at the request of the defense a little less than a month prior to the trial. Although she had many complaints, his only physical finding was that of a minimal limitation of motion in the neck. He examined the x-ray reports which showed that Mrs. Burgy had moderate osteoarthritis in the neck. He x-rayed both shoulders and these showed not only the softening of the bone, osteoporosis, but also some mild osteoarthritic changes in the shoulders. He related none of these conditions to the accident. It was his opinion that she had sustained a relatively mild sprain of the neck and that her present symptoms were due to the pre-existing osteoarthritis in the neck and not due to the accident. According to Dr. DeVries if he had looked at Mrs. Burgy's x-rays on the date of the accident, assuming no accident had in fact occurred, he would have been surprised had she not had any complaints of neck pain. On cross-examination Dr. DeVries testified:

"Q. Your testimony has been that the changes that you see on the x-rays two years after the accident are essentially the same as what they were on the date of the accident?

A. Yes, sir. In this I base my statement that there was no acceleration or permanent aggravation of the arthritic change that she has in her neck.

Q. You would agree, wouldn't you, Doctor, that the trauma of the blow of the accident aggravates—in this case is aggravating the arthritic condition?

A. That's what I said a few minutes ago.

Q. In that it is now producing pain for her?

A. The arthritis in her neck, yes. Not the accident.

Q. Wouldn't you agree, Doctor, that the trauma has triggered the situation to where now she's experiencing the pain as opposed to not before?

A. Well, sooner or later the majority of people that have an arthritic problem in the neck are going to have—start hav-

ing neck pain, arm pain, head pain, whatever. This accident in particular in this instance in my opinion is kind of a straw that broke the camel's back and triggered it off.

Q. May have well gone on the rest of her life without having arthritic pain?

A. Possible, not very probable.

Q. You wouldn't have told her when she came to you in 1975, you wouldn't have been able to tell her whether or not for certain that she would have had pain?

A. On that date?

Q. Yes.

A. No way.

\* \* \*"

On redirect examination Dr. DeVries testified that the cervical strain caused only a temporary aggravation of her arthritis.

We are not faced with the situation which existed in *Anderson v. Muniz,* 21 Ariz.App. 25, 515 P.2d 52 (1973) in which there was no dispute that the medical expenses were related to the accident. Instead, the situation here is analogous to that in *Meyer v. Ricklick,* 99 Ariz. 355, 409 P.2d 280 (1965). Although at first blush one could conclude that the verdict was an award of medical expenses only, the jury could have concluded from the testimony of Dr. DeVries that not all of the 54 office visits were attributable to the accident but nevertheless awarded her an amount equal to her unrelated medical expenses in the way of pain and suffering.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.